Carroll,
No. 5328.

RAYMOND A. WEEKS *v.* HARRY H. MACCORMAC.

Argued May 4, 1965.
Decided June 30, 1965.

*Preston B. Smart* for the plaintiff.

*James J. Kalled* (by brief and orally), for the defendant.

DUNCAN, J. The facts sufficiently appear from the findings and rulings of the Trial Court, which were as follows:

"The plaintiff owns certain land situate in Wakefield, which he acquired title to in 1932, and which is bounded northerly by the Acton Ridge Road, which is a public highway, and land

of others, westerly by the Old Dearborn Road, a public highway, southerly by the Great East Lake, and easterly by the New Hampshire-Maine state line, excepting therefrom certain lots which have been conveyed.

"The roadway in question, hereinafter referred to as the camp road, runs easterly from the Old Dearborn Road, through the above described property, to the state line, a distance of about 575' and is approximately parallel to and 200' northerly of the shore line. The lots which have been conveyed lie on both sides of this road; the plaintiff still owns at least one lot on each side. There are a number of cottages along this road.

"The defendant owns at least a part interest in land situate in Acton, Maine, which is bounded northerly by the Acton Ridge Road and land of others, westerly by the above mentioned state line, which, as stated above, is the plaintiff's easterly bound, southerly by the Great East Lake and easterly by land of others. The defendant's mother acquired title to this property in 1918, and although there was no evidence as to what, if any, interest the defendant now has, it does appear from the plaintiff's petition and requests, and the defendant's argument, requests and his counsel's representations at the hearing, that the parties are in agreement that the defendant owns at least a part interest.

"The defendant and his family and invitees have been using the camp road for a number of years to go from the Old Dearborn Road into Maine to a part of the defendant's property which is on the shore and is undeveloped. On August 5, 1963 the plaintiff notified the defendant to discontinue his use of this road; subsequently the plaintiff blocked the road near the state line on several occasions, and on each occasion the defendant removed the obstruction and continued to use the road.

"The plaintiff claims that the defendant's use of the camp road was permissive, and that he had no right to use it after the permission was withdrawn on August 5th. The defendant claims that he is entitled to use the camp road to get to his property, or to cross the plaintiff's property at some other location for that purpose.

"The plaintiff opened up the camp road in 1934. For many years prior thereto, there was a road across the property now owned by the plaintiff, which branched off from the Old Dearborn Road at a location northerly of where the camp road was later opened up, proceeded in a southeasterly direction to a location on the state line approximately where the easterly end

of the camp road was subsequently located, and then went onto what is now the defendant's property. This road went over different land than does the camp road, except at or near the state line. For identification purposes, it was referred to at the hearing as the Combie road, since, prior to when the camp road was opened up, it served, in part, a camp owned by one Combie which was located on the shore lot, conveyed from what is now the plaintiff's property, that abuts the state line. There has been no other road across this property to the state line.

"The defendant and his parents used the Combie road to get to their shore property for many years prior to 1934. In that year, or a year or two prior thereto, the plaintiff plowed up a section of the Combie road for use as part of a pasture, and that section has since been a field. Thereafter this road was no longer used to go from the Old Dearborn road to the defendant's property, and other sections of it grew up with brush and trees. After the plaintiff plowed up a section of the Combie Road, the defendant's parents, the defendant, and their invitees used the camp road to get to the shore property now owned by the defendant, and he has continued to do so to the present time. The defendant's parents, the defendant, and their invitees have gone to that shore property to use it for recreational purposes.

"The Combie road was a private wood road, and not a public highway. Likewise the camp road is, and always has been, a private road, and not a public highway.

"The use of the Combie road by the defendant and his predecessors was a permissive, and not an adverse, use. Likewise, the use of the camp road by them has been permissive and not adverse, until August, 1963, when the defendant's use became adverse. Neither the defendant nor his predecessors ever acquired a right of way by adverse uses over the Combie road or the camp road.

"Further, neither the defendant nor his predecessors ever acquired any right of way over the plaintiff's property by grant or agreement, express or implied."

The principal contention of the defendant relates to his exception to the finding and ruling that the "use of the Combie road by the defendant and his predecessors was a permissive, and not an adverse, use." The defendant testified that the Combie road was used "continually and exclusively" to get to the Maine property from 1910 to 1934. There was however, no evidence of use of the road by Clark, who was the immediate predecessor in

title of the MacCormacs, and the property was not acquired by the MacCormacs until December 9, 1918.

The defendant testified that no one ever questioned their right to use "the Dearborn Road and the Combie Road" to get to their property, and that no one ever gave permission for them to use "the Dearborn Road," which the Court found was a public highway running from the Wakefield-Acton highway to the shore of Great East Lake. The use of the Combie Road, to which the defendant testified, was to get to the lake "for beach purposes" in the summer, and he stated "that's all" they "used the Combie Road for was to go down to the beach down there."

The plaintiff's testimony was that the defendant's father had owned the land across the state line, that he "used to go in the way Combie's folks did for a little while—I don't know how long" and that "he actually used that right of way with . . . permission." It appeared that the plaintiff's father and uncle had acquired the New Hampshire property in 1921 and that the first of five lots by the lake was sold to Combie in the same year. There was evidence that Combie also used the road in question to reach his camp. The plaintiff testified that when he closed off the Combie road in 1934, to use it as part of a pasture, the defendant "came to me . . . and wanted to buy a right of way over . . . the proposed right of way [the camp road] and I told him I didn't care to sell but the MacCormac family would never be barred as long as everything went all right."

We are satisfied that the record as a whole warrants the Trial Court's finding and ruling that the defendant had no right of way by adverse user over either the Combie road or the camp road. The use made could properly be found to have been permissive, as was Combie's use of the Combie road. The evidence did not compel a finding that the use made of this road by the defendant and his predecessors was either adverse or for the prescriptive period of twenty years. *Goodwin* v. *Johnston*, 105 N. H. 294; *Ucietowski* v. *Novak*, 102 N. H. 140, 145. See *Jean* v. *Arsenault*, 85 N. H. 72; *Wilson* v. *Goodnow*, 98 N. H. 110. Termination of the use could be found to have resulted from assertion of a paramount right by the plaintiff. See *Salminen* v. *Jacobson*, 83 N. H. 219, 220. ˙

The defendant's further argument that the plaintiff will be unjustly enriched by the relief granted is based upon the premise that the defendant relinquished a right of way by prescription when he ceased to use the Combie Road in 1934. This contention,

354

and his final argument that the injunction should be limited to prohibition of any enlargement of "his prescriptive rights" beyond use for "residential purposes," are afforded no basis in the record in view of the findings and rulings that he acquired no prescriptive rights.

Our review of the record discloses no error, and the order is

*Exceptions overruled.*

All concurred.